# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LUCIAN MORRISON, | § | |
| INDEPENDENT ADMINISTRATOR | § | |
| WITH WILL ANNEXED OF THE | § | |
| ESTATE OF DENNIS RANZAU | § | |
| AND 80451 HOLDINGS LTD. | § | |
| Appellants, | § | |
| | § | |
| v. | § | No. 4:05-cv-446 |
| | § | |
| WILLIAM DENNIS BROSSEAU, | § | |
| BANCO NACIONAL DE MEXICO | § | |
| S.A., AND ANGELINA MARIA | § | |
| PEREZ, | § | |
| Appellees. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is an appeal from the United States Bankruptcy Court for the

Eastern District of Texas, Sherman Division.  Appellants challenge that court's

September 30, 2005, Memorandum of Decision Regarding Motions for Summary

Judgment and accompanying Judgment.  This Court has jurisdiction over the matter

pursuant to 28 U.S.C. § 158(a).  Having carefully reviewed the submissions of the parties

and in light of the record on appeal, the circumstances of this case, and the applicable

law, the Court AFFIRMS the decision of the bankruptcy court.

## I.    STATEMENT OF THE APPEAL

At the heart of this dispute is whether the bankruptcy court, in approving the sale

of the bankruptcy estate's interest, if any, in a piece of real property by quitclaim deed,

also approved a settlement agreement between non-debtors regarding that same piece of

property, thereby assuming jurisdiction over any future disputes involving the ownership

of that property.

## II.      FACTUAL BACKGROUND

### A.      Casa T and the Liberty County Proceeding

This dispute arises over the ownership of a piece of real property known as Casa T,

and a sale order entered by the bankruptcy court concerning that property.  Casa T is a

villa located in the Las Brisas section of Acapulco, Mexico.  A Mexican trust owned legal

title to Casa T, and the trustee of the Mexican trust was Banco Nacional de Mexico, S.A.

("Banamex").  The sole beneficiary of the Mexican Trust was a Canadian company called

80451 Holdings, Ltd. ("80451").  All of the issued common stock in 80451 was

represented by one share certificate for one share.

The ownership the share certificate and Casa T has been the subject of litigation

between Dennis R. Ranzau ("Ranzau") and William D. Brosseau ("Brosseau") for years.

The litigation began in 1989 with a proceeding in the 253rd Judicial District Court of

Liberty County, Texas (the "Liberty County Proceeding").  On April 21, 1989, the court

in the Liberty County Proceeding appointed a receiver to take possession and control of

Casa T and the equity interests in 80451.  On October 8, 1991, Brosseau filed for

bankruptcy.  On June 4, 1992, the bankruptcy court denied Brosseau's request that Casa T

be turned over to the bankruptcy court, citing the ongoing state court litigation.  The

bankruptcy court, Judge Houston Abel presiding, concluded, "The court has declined to order turnover because the property may not be property of the estate."  Judge Abel denied Brosseau's motion to reconsider this decision on August 24, 1992.

### B.     The Sale of Casa T

On November 1, 1993, the bankruptcy trustee ("Trustee") appointed to administer Brosseau's bankruptcy estate filed a motion to sell, for $70,000, "property or potential property of the estate," namely Casa T and the stock of 80451, to Ranzau ("Motion for Sale").  Brosseau, his then wife, Teresa Brosseau (whom Brosseau has now divorced), and the Brosseau Children's Trust (the "Children's Trust") initially objected to the Motion for Sale.  These objections were withdrawn after Teresa Brosseau, the Children's Trust, the receiver from the Liberty County Proceeding and Ranzau entered into a settlement agreement on January 12, 1994 (the "Settlement Agreement").  That same day, the bankruptcy court held a hearing on the Motion for Sale.

At the conclusion of the hearing, Judge Abel signed the Order Approving Trustee's Motion to Sell Property or Potential Property of the Estate Under 11 U.S.C. §363 (the "Sale Order").[1]  On February 1, 1994, the Trustee conveyed Casa T to Ranzau

---

[1] At the hearing the Court also approved the Agreed Judgment Denying Discharge, which contained a clause stating that its entry did not prejudice Brosseau from pursuing "by trial, appeal, claim, objections or otherwise in any state, federal or bankruptcy court, his right to defend and litigate the validity, enforceability or amount of damages or any claims of any of his creditors, including, but not limited to . . . Dennis Ranzau."  Brosseau's creditors, including Ranzau, were also permitted to pursue their claims against Brosseau, regardless of the bankruptcy proceedings.

3

by quitclaim deed, which relinquished any right the estate might have to the stock of

80451 and Casa T.  That same day, the Trustee also executed a bill of sale.  Under the bill

of sale, the Trustee agreed to sell, assign, transfer, set over and deliver to Ranzau without

any representations or warranties of any kind, "all of the rights, titles, interests and

claims, *if any*, which may be owned, possessed or asserted *by the Bankruptcy Estate* in

and to the following": (1) the stock of 80451 (2) any claim, action or suit against Ranzau,

including but not limited to claims arising in connection with Casa T, (3) any claim,

action or suit against the receiver in the Liberty County Proceeding, (4) any claim, action

or suit by, through or against Teresa Brosseau, which forms the basis of any interest she

may have in and/or could assert to or against Casa T or Ranzau and (5) any partnership

interest in any partnerships that have or had an interest in Casa T.[2]  Teresa Brosseau and

the Children's Trust also conveyed Casa T to Ranzau and executed a similar bill of sale

on February 1, 1994.

### C.    The Post-Sale Events

Appellants allege that after the execution of the conveyances and bills of sale,

"Brosseau engaged in a series of transactions designed to eviscerate the effect of the

1/12/94 Sale Order."  First, Appellants allege that on May 17, 1994, Brosseau, acting as a

director of 80451 and as a trustee of the Brosseau Children's Trust, signed a director's

resolution authorizing the issuance of 9,999 additional common shares of 80451 to

---

[2] A release attached to this bill of sale released any claims Ranzau may have against the estate.

Desarrollo Turistico Alexa, S.A. De C.V. ("Desarrollo"), a corporation organized under the laws of Mexico.  According to Brosseau, the stock of Desarrollo was owned by the Brosseau Children's Trust.  The issuance of these additional shares watered down the one original share in 80451.

Next, Appellants allege Brosseau attempted to nullify the Sale Order through an order from the Dallas state court in which Brosseau's divorce with Teresa Brosseau was pending.  Appellants state Brosseau "orchestrated" the inclusion of a provision in his September 1994 divorce decree, which states that the title to the stock in 80451 was not affected by the Settlement Agreement.  The provision also states that Brosseau, as trustee to the Children's Trust, had controlled and owned all interest in the 80451 stock, and that all interest in Casa T is owned by Brosseau's children, Jordan and Alexa Brosseau.

A little over one year later, on October 31, 1995, Brosseau allegedly instigated a lawsuit in Mexico, which was brought on behalf of 80451 against Ranzau, Banamex and the receiver in the Liberty County Proceeding.  According to Appellants, Brosseau used the provision in the divorce decree to "fraudulently induce the Mexican Court into finding that the Brosseau Childrens Trust, through its ownership of Desarrollo was the owner of 80451 and that Ranzau did not own any stock interest in 80451."

Finally, Appellants allege that on December 14, 1995, Brosseau, on behalf of 80451, signed a bogus promissory note in favor of Desarrollo for $100,000 to document a loan from Desarrollo to 80451.  Murry K. Morrison ("Morrison"), director, president and

5

secretary of 80451, states that such a loan never existed.  On July 9, 1999, Desarrollo

filed a lawsuit against 80451 in Mexico to recover on the loan.  Appellants claim this

lawsuit was a sham.  Appellants point out that by that time, Brosseau had sold his entire

interest in Desarrollo to his girlfriend, Angelina Maria Perez ("Perez").  According to

Appellants, on July 12, 1999, the parties reached a settlement agreement in this second

Mexican lawsuit whereby Perez, acting on behalf of 80451, confessed that 80451 indeed

owed $100,000 to Desarrollo, a company in which she now had an interest.

Appellants state that Ranzau's attorney and Morrison each sent Banamex letters in

March and April of 2000, outlining in great detail the fraudulent nature of Perez' actions

in connection with the $100,000 loan and the allegedly fraudulent July 12, 1999,

settlement.   Morrison told Banamex that Perez had never been authorized to take any

action on behalf of 80451.  On July 19, 2001, Banamex and Perez (acting on behalf of

Desarrollo) transferred Casa T to a third party in Mexico, Formento Inmobiliario Y De La

Consticcion S.A. De C.V. for $1,200,000.  Appellants' state that their Mexican law expert

has concluded that Banamex's participation in the sale was a violation of Mexican law.

### D.    The Complaints Filed After the Close of the Bankruptcy

On October 19, 2001, approximately five years after the close of the bankruptcy

case, Ranzau filed a complaint in the bankruptcy court.  This complaint was amended on

July 4, 2004.  Between the filing of the original complaint and the amended complaint,

Ranzau died, and Lucian Morrison, the Independent Administrator with Will Annexed of

the Estate of Dennis Ranzau, Deceased, and 80451 Holdings substituted in as Plaintiffs.

They are also the current Appellants.  The amended complaint brought claims and causes

of action against several defendants, but Brosseau, Perez and Banamex were the only

defendants remaining when the bankruptcy court entered the orders that are at issue in

this appeal.

In the amended complaint, Plaintiffs alleged civil contempt against Brosseau,

Perez and Banamex, and asked the bankruptcy court to enter orders (1) requiring

Brosseau to show cause why he should not be held in contempt for violating the Sale

Order and (2) requiring Perez and Banamex show cause why they should not be held in

contempt for conspiring with Brosseau to violate the Sale Order.  Plaintiffs also alleged

that Brosseau committed fraud by making material misrepresentations to Plaintiffs.

Plaintiffs alleged that Perez, Banamex and several other defendants conspired with

Brosseau to commit that fraud.  Additionally, Plaintiffs alleged RICO violations against

Brosseau, Perez and Banamex.  Finally, Plaintiffs requested that Brosseau, Perez and

Banamex be required to account for the proceeds from the sale of Casa T.  Although

injunctive relief was requested in the original complaint, it was not requested in the

amended complaint.  All of Plaintiffs' causes of action stemmed from their allegation that

the Defendants have interfered with Ranzau's possession, control, or ownership of Casa T

in violation of the bankruptcy court's Sale Order.

Operating off of the original complaint, on October 30, 2001, the bankruptcy court,

7

Judge Donald R. Sharp presiding, denied the request by Plaintiff (then Ranzau) for a

temporary injunction for lack of subject matter jurisdiction and *sua sponte* dismissed the

proceedings.  On December 7, 2001, the bankruptcy court denied Plaintiff's request for

reconsideration of the October 30, 2001, order.

### E.     The First Appeal to the District Court

On December 17, 2001, Plaintiff (then Ranzau) appealed Judge Sharp's decisions

to the District Court.  On appeal, the District Court, Judge William M. Steger presiding,

reversed, holding that a bankruptcy court has subject matter jurisdiction to enforce its

own orders, even after the bankruptcy case is closed.  On September 17, 2002, Judge

Steger remanded the case to the bankruptcy court to determine the merits of the

complaint.

### F.     The Instant Appeal

On remand, the amended complaint and several dispositive motions were filed.

This appeal stems from the Memorandum of Decision and accompanying Judgment from

the bankruptcy court, Judge Brenda T. Rhoades presiding, granting motions for summary

judgment filed by Brosseau and Perez and a motion to dismiss, which the Court converted

into a motion for summary judgment, filed by Banamex.  In their "Statement of Issues

Presented," Appellants question the bankruptcy court's rulings on the motions for

summary judgment on both substantive and procedural grounds.  Appellants also list as an

issue whether the bankruptcy court erred in not granting Plaintiffs' Motion Pursuant to 28

U.S.C. §157(d).

## III.    STANDARD OF REVIEW

On appeal, the district court reviews the bankruptcy court's findings of fact for

clear error and its conclusions of law de novo.  *See In re Hamilton*, 125 F.3d 292, 295

(5th Cir. 1997).  Under the clearly erroneous standard, a bankruptcy court's findings of

fact will be reversed only if, considering all the evidence, the district court is left with the

definite and firm conviction that a mistake has been made.  *See In re Kemp*, 52 F.3d 546,

550 (5th Cir. 1995).

In reviewing a bankruptcy court's interpretation of its own orders, the district court

reviews any legal issues *de novo*, but defers to the bankruptcy court's reasonable

resolution of any ambiguities in its own orders.  *See In re Nat'l Gypsum Co.*, 219 F.3d

478, 484 (5th Cir. 2000).  Textual interpretation of a court order is ultimately a legal

question, so an order "must be truly ambiguous" before the Court defers to the bankruptcy

court's interpretation of that order.  *See id.*  In other words, if an order is not ambiguous,

the Court reviews that order *de novo*.

## IV.    DISCUSSION

### A.    The Bankruptcy Court Did Not Err In Granting the Motions for Summary Judgment

Appellants argue that Judge Rhoades erred in (1) granting the motions for

summary judgment filed by Brosseau and Perez and (2) granting the motion for summary

judgment converted from a motion to dismiss filed by Banamex.  Judge Rhoades

interpreted the Sale Order and found that the order only authorized the Trustee to sell the

estate's interest in certain property to Ranzau.  Therefore, according to Judge Rhoades,

the Sale Order could not be the basis for the claims and causes of action in Plaintiffs'

complaint.   Further, Judge Rhoades held that Plaintiffs did not submit any evidence that

the Defendants had violated any prior bankruptcy court order, that the Court was

defrauded, or that any term of the bankruptcy court's prior order had not been fully

executed.  Accordingly, Judge Rhoades reasoned that the Defendants claims and causes

of action were outside of the interpretation and enforcement of the bankruptcy court's

prior orders and outside of the bankruptcy court's ancillary jurisdiction.  Finally, because,

according to Judge Rhoades, there was no genuine issue of material fact as to claims and

causes of action within the bankruptcy court's jurisdiction, the bankruptcy court granted

the motions for summary judgment.  Appellants advance four arguments as to why this

decision was in error.

### 1.     Jurisdiction

Appellants first argue that Judge Rhoades erred in finding that the bankruptcy

court had no subject matter jurisdiction over Plaintiffs' complaint.  In particular,

Appellants point to Judge Steger's order remanding the case to the bankruptcy court.

After the bankruptcy court determined it did not have jurisdiction because the bankruptcy

case was closed, Judge Steger reversed and remanded, holding that the bankruptcy court

did have jurisdiction, because a bankruptcy court has jurisdiction to enforce its own orders. Appellants argue that because Judge Steger has already determined subject matter jurisdiction, the bankruptcy court and this Court are barred from reexamining that decision, except under limited circumstances not relevant here.

Appellants are correct that an issue of fact or law decided on appeal may not be reexamined by a district court on remand or by an appellate court on subsequent appeal. *U.S. v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002)(citations omitted). In fact, in an unpublished opinion, the Fifth Circuit stated, "'After a Federal court has decided the question of the [subject matter] jurisdiction over the parties as a contested issue,' the court has no further basis, absent an allegation of fraud, to revisit that decision." *Addington v. Addington*, No. 02-21352, 2003 WL 22316904, at *1 (5th Cir. October 9, 2003)(citations omitted). However, Judge Rhoades' decision granting the motions for summary judgment did not revisit Judge Steger's decision on jurisdiction.

The bankruptcy court did assume its limited jurisdiction over the case to interpret and enforce its own orders. However, upon examination of the Sale Order and the hearing on the Motion for Sale, the bankruptcy court determined that the Sale Order "simply authorized the Trustee to sell the estate's interest in certain property to the Plaintiff." Judge Rhoades determined that the Plaintiffs had not submitted any evidence to establish that the Defendants had violated any prior order of the court, that the court had been defrauded, or that any term of the bankruptcy court's prior order had not been

11

fully executed.   Consequently, the claims and causes of action in Plaintiffs' complaint fell outside of the bankruptcy courts interpretation and enforcement of its prior orders and, therefore, outside of its limited jurisdiction.

### 2.      Scope of the Sale Order

Appellants also argue that Judge Rhoades erred in her determination that the bankruptcy court only authorized the Trustee to sell the estate's interest in the certain property to Ranzau.  Appellants do not argue that the text of the Sale Order itself authorized more than the sale of certain property to Ranzau.  Instead, Appellants point to a colloquy during the hearing on the Motion for Sale, which took place between Teresa Brosseau's attorney and Judge Abel after terms of the settlement were read into the record:

> Mr. Lucas:     Your honor, I think it's implicit but I want to make clear that our settlement and withdrawal of Teresa Brosseau's objection is contingent upon the settlement we've reached.  If for some reason payment is not made or something happens we would reinstate our objection and would want a Hearing on that.
>
> The Court:     That goes without saying, Counsel.

Appellants state, "It is hard to understand given this passage how Judge Rhoades can conclude that the settlement reached with Brosseau's wife and the Children's Trust was not 'part and parcel' of the process through which the 1/12/94 Sale Order was

considered and entered by the Bankruptcy Court." It appears Appellants' argument is that, through the hearing, the Settlement Agreement either became part of the Sale Order or was somehow approved by the bankruptcy court along with the Sale Order.

A brief description of the relevant portion of the hearing is helpful here. At the hearing, Mr. John Hardy, counsel for Ranzau, stated the terms of the settlement into the record at the allowance of the bankruptcy court. Judge Abel asked Mr. Laird Lucas, counsel for Teresa Brosseau, whether he stipulated and agreed on behalf of his client to the terms read by Mr. Hardy into the record. Mr. Lucas so stipulated and Judge Abel stated, "All right. It's on the Record."

Because Mr. Brosseau had originally objected to the sale, Mr. Weldon Moore, counsel for Mr. Brosseau, told Judge Abel that Mr. Brosseau wanted certain items placed into the record, including three exhibits and three paragraphs to be read into the record. The exhibits were certified court documents, and the paragraphs to be read into the record were taken from a pleading on file of which Mr. Brosseau wanted the bankruptcy court to take judicial notice. Judge Abel allowed Mr. Moore to place the items on the record. After doing so, Mr. Moore stated that Mr. Brosseau withdrew his objections to the sale. Judge Abel asked Mr.George Barber, counsel for the Trustee, whether he had any objection to the conditions of withdrawal of Mr. Brosseau's objections (that is, to the exhibits and the reading of the paragraphs into the record). Mr. Barber stated he had no objection, as long as Mr. Moore withdrew the objection. Judge Abel then asked, "All

13

right.  Now so – anyone else?"  It is at this point that the colloquy Appellants cite between

Mr. Lucas and Judge Abel took place.  That colloquy and rest of the relevant colloquy

went as follows:

Mr. Lucas:  Your honor, I think it's implicit but I want to make clear that our

settlement and withdrawal of Teresa Brosseau's objection is

contingent upon the settlement we've reached.  If for some reason

payment is not made or something happens we would reinstate our

objection and would want a Hearing on that.

The Court:  That goes without saying, Counsel.

Mr. Lucas:  Okay.

The Court:  Mr. Barber, I don't want – I don't want it to be an impression that

that's a finding of the Court, those statements.

Mr. Barber:  Correct, Your Honor.  We don't – we don't –

The Court:  That Mr. Moore quoted.  That's simply a condition of his option to

withdraw the objection to the sale.

Mr. Barber:  Correct, Your Honor.

The Court:  You understand that?

Mr. Barber:  Yes, sir.

The Court:  All I'm going to do based on that is approve or disapprove the sale.

Mr. Barber:  Correct, Your Honor.

14

The Court:    All right.  Is that your understanding, Mr. Moore?

Mr. Moore:    Your Honor, just one slight thing.  I'm just requesting the Court  take Judicial Notice.  Those are Pleadings found in the Court's files filed by Mr. Ranzau.  That's all.  We're not requesting the Court to make those specific findings.

The Court:    All right.  I'll take – so noticed the Pleadings requested by the objector –

Judge Rhoades found that Judge Abel was referring to the Settlement Agreement when he stated that he was not making "those statements" findings of the court and when he stated all he was going to do was approve or disapprove the sale.  Appellants argue that when Judge Abel stated that matters read and introduced into the record did not become findings of the court, he was actually referring only to the items offered into the record by Mr. Brosseau's attorney, Mr. Weldon Moore, and not to the Settlement Agreement. Judge Abel does state that he is not making "those statements" "that Mr. Moore quoted" a finding of the bankruptcy court.  Judge Abel also states, "All I'm going to do based on that is approve or disapprove the sale."  Appellants apparently contend the "based on that" portion of Judge Abel's statement refers to Mr. Moore withdrawing Mr. Brosseau's objections in exchange for placing items on the record.

However, even assuming Appellants are correct and Judge Abel's statements are limited to Mr. Moore placing items onto the record, Appellants fail to show, as they

contend, that "title to the capital stock of 80451 and the Casa T had been 'quieted' by the transactions and the process that occurred before, and was presided over by, a Federal Bankruptcy Judge."

As Appellee Banamex points out, although Judge Abel allowed the Settlement Agreement to be read into the record, the bankruptcy court never took any action or made any ruling on the agreement.  All Judge Abel did was sign the Sale Order itself.

The Court finds that the Sale Order itself is unambiguous.  Therefore, the Court reviews the Sale Order *de novo*.  The Sale Order makes no mention of the Settlement Agreement.  The unexecuted items attached to the Sale Order when Judge Abel signed it, referred to collectively in the Sale Order as "Exhibit A," included a letter detailing the terms of the sale, a bill of sale, and a quitclaim deed.  The Settlement Agreement was not attached to the Sale Order nor was it mentioned in the Trustee's Motion for Sale (because the settlement had not occurred yet).  Further, Judge Rhoades is correct that all the Sale Order did, on its face, was sell the ***bankruptcy estate's*** interest, ***if any***, in the property to Ranzau.  The Sale Order itself makes no determination as to any other person's right to the property.[3]

Moreover, it appears the bankruptcy court would not have jurisdiction to enforce

---

[3] Additionally, Casa T and the equity interests in 80451 were never made a part of Brosseau's estate.  For this reason, the Sale Order was for "property or *potential property* of the estate" and the sale was for the bankruptcy estate's interest, "*if any*," in the property.  In fact, the speculative nature of the bankruptcy estate's potential claim over the property is the reason the Trustee recommended the sale.  The fact that the property never did become part of the bankruptcy estate raises jurisdiction questions of its own.

the Settlement Agreement even if the bankruptcy court had, in fact, approved the

Settlement Agreement.  In *Kokkonen v. Guardian Life Insurance Company of America*,

the parties reached a settlement and executed a stipulation and order of dismissal with

prejudice which did not refer to the settlement agreement or reserve District Court

jurisdiction to enforce it.  511 U.S. 375 (1994).  After the District Judge signed the order,

a dispute arose over the terms of the settlement agreement.  *Id.* at 375.  The Supreme

Court held that the District Court did not have the jurisdiction to enforce the settlement

agreement, stating,

> The situation would be quite different if the parties' obligation to comply with the
> terms of the settlement agreement had been made part of the order of dismissal . . .
> .In that event, a breach of the agreement would be a violation of the order, and
> ancillary jurisdiction to enforce the agreement would therefore exist. . . .The
> judge's mere awareness and approval of the terms of the settlement agreement do
> not suffice to make them part of his order.

*Id.* at 381.  Although *Kokkonen* relates to the ancillary jurisdiction of federal district

courts, "[a] number of bankruptcy courts have applied Kokkonen's holding to bankruptcy

cases and proceedings to determine whether a bankruptcy court has jurisdiction to reopen

a closed case to address an issue related to a settlement agreement."  *In re Fibermark,*

*Inc.*, 369 B.R. 761, 766 (Bankr. D.Vt. 2007).  The underlying theory behind *Kokkonen* is

that "if the court's order retains jurisdiction, or if the agreement's terms are incorporated

into the order, a breach of the agreement will constitute a violation of the order, which will invoke the court's power to 'protect its proceedings and vindicate its authority.'" *In re Poplar Run Five Ltd. Partnership*, 192 B.R. 848, 859 (Bankr. E.D.Va. 1995)(citing *Kokkonen*, 511 U.S. at 380). Here, as in *Kokkonen*, the Sale Order contains no provision stating that the bankruptcy court retains jurisdiction over the Settlement Agreement. In fact, the Sale Order makes no mention of the Settlement Agreement, and does not incorporate any of its terms.[4]

The claims and causes of action raised in Plaintiffs'/Appellants' complaint do not arise out of a violation of the Sale Order itself, and the Court agrees with Judge Rhoades that there are no other bankruptcy court orders Brosseau, Perez or Banamex have violated. Accordingly, the Court agrees with Judge Rhoades that the claims and causes of action in Plaintiffs'/Appellants' complaint fall outside of the bankruptcy courts interpretation and enforcement of its prior orders and, therefore, outside of its limited jurisdiction.

### 3.       Language in the Sale Order

Appellants contend there is another error in Judge Rhoades opinion, but the significance of such an error is unclear. Appellants state that while Judge Rhoades is

---

[4] Even Appellants concede that the Sale Order did not incorporate the Settlement Agreement. In their brief, Appellants state, "Judge Rhoades then incorrectly states that '[t]he Plaintiff also argues that the Sale Order incorporates the settlement agreement made between the Plaintiff, the Childrens' Trust, the Debtor's ex-wife and the receiver in the Liberty County Proceedings."

18

correct that a bankruptcy court's role is limited to approval of a trustee's business decisions, Judge Abel's Sale Order not only approved the Trustee's motion to sell the property but also directed the Trustee to consummate the sale completed therein.  While this may be true, this Court fails to see how the bankruptcy court "directing" the sale rather than "authorizing" the sale warrants a reversal of Judge Rhoades' decision.  The relevance lies with the scope of the Sale Order, which was, as stated earlier, limited to the sale of the estate's interest, if any, in certain property to Ranzau.

4.     **The Principles of Res Judicata, Comity and the Rooker-Feldman Doctrine**

Appellants final argument is that Judge Rhoades erred when she determined that the principles of res judicata, comity and the Rooker-Feldman doctrine prohibit the bankruptcy court from reviewing the orders of other jurisdictions.  Judge Rhoades makes it clear in the "Conclusion" portion of her opinion that her holding is based on her evaluation of the Sale Order and the fact that Plaintiffs did not submit any evidence to establish that Defendants violated any prior order of the bankruptcy court.  It is that holding that this Court affirms.

However, Judge Rhoades does include another section towards the end of her opinion in which she discusses all of the litigation that has occurred in Mexico, Canada[5]

---

[5] On July 24, 1996, Ranzau initiated legal proceedings before the Supreme Court of British Columbia, Vancouver, Canada, against Brosseau, 80451, Teresa Lucas (formerly known as Teresa Brosseau), and the Children's Trust to resolve the ownership dispute and restrain any additional disposition of the sale property.

19

and the Texas state courts related to the claims in Plaintiffs' complaints.  Judge Rhoades

notes that the bankruptcy court, along with the parties affected thereby, may be bound

under the principles of comity, res judicata, or collateral estoppel to honor the judgments

and orders of these other courts.

Appellants do not argue that Judge Rhoades legal reasoning on comity, res judicata

and collateral estoppel is incorrect.  Appellants instead state, "Everything that has

occurred in the other courts referenced by Judge Rhoades are, at least in part, a result of

the 1/12/94 Sale Order," and the actions by these other courts only effect Brosseau's

interest in the property.  Therefore, according to Appellants, the bankruptcy court should

collaterally and judicially estopp Brosseau from raising issues decided by the  Beaumont

Court of Appeals (the appellate court on the Liberty County Proceedings) and the

Canadian court.  Appellants state, "The enforceability of the Dallas Divorce Proceeding

and the Mexican Judgment have been conclusively determined against the interest of

Brosseau by the Beaumont Court of Appeals.  Brosseau cannot now attempt to seek relief

that conflicts with the clear rulings of the Beaumont Court of Appeals."

The Court is unclear what further relief Appellants seek from the bankruptcy court

if, as Appellants argue, the Beaumont Court of Appeals has already "conclusively

determined against the interest of Brosseau."  As Judge Rhoades correctly states, "All of

the above referenced proceedings were in courts of competent jurisdiction, courts capable

of determining whether or not their orders were obtained through fraud and courts

capable of enforcing their own orders."

**B.     The Issue of Whether the Bankruptcy Court Erred In Converting Banamex's Motion to Dismiss into a Motion for Summary Judgment was Abandoned On Appeal**

In the "Statement of Issues Presented" portion of their brief, Appellants list as an issue "Did the Bankruptcy Court err in treating the Motion to Dismiss filed by Banco Nacional De Mexico, SA as a Motion for Summary Judgment and in granting such a motion?"  The Court has already determined the bankruptcy court did not err in granting the motion.  Whether the bankruptcy court erred in converting the motion to dismiss into a motion for summary judgment is not briefed at all by Appellants.  Federal Rule of Appellate Procedure 28(a)(9) requires that an appellant's brief contain an argument, which must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."  Issues not properly briefed are deemed to be abandoned on appeal, even if they are raised as a point of error. *See Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990).  Accordingly, the Court finds that Appellants have abandoned this issue and there is no reason to address it further.

**C.     The Issue of Whether the Bankruptcy Court Erred In Failing to Grant Plaintiff's Motion Pursuant to 28 U.S.C. §157(d) was Abandoned On Appeal**

Finally, in the "Statement of Issues Presented" portion of their brief, Appellants

list as an issue "Did the Bankruptcy Court err in failing to grant Plaintiff's Motion Pursuant to 28 U.S.C. §157(d)?"  Appellants do not brief this issue either.  Instead, in the "Conclusion" portion of their brief, Appellants simply state, "Appellants would ask this Court to withdraw the reference for the reasons set forth in Appellants' Motion Pursuant to 28 U.S.C. §157(d) and Sur-Reply Regarding Banamex' Motion."  The Fifth Circuit has held that an appellant has abandoned an argument by failing to make the argument in the body of his brief and instead attempting to incorporate the argument from another pleading.  *Yohey v. Collins*, 985 F.2d 222, 224-225 (5th Cir. 1993).  Therefore, the Court finds that Appellants have abandoned this issue as well and there is no reason to address it further.

## V.     CONCLUSION

For the foregoing reasons, the Court AFFIRMS the bankruptcy court's September 30, 2005, Memorandum of Decision Regarding Motions for Summary Judgment and the accompanying Judgment.

It is SO ORDERED.

**SIGNED this 27th day of September, 2007.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

22